UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-400-FDW

| | |
|---|---|
| WILLIAM THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU TRIPLETT, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Johnathon Holder, Oscar Martinez, Anthony Snipes, Tahjia Chapman, and Sally Triplett.[1] (Doc. No. 50). Also pending before the Court is Defendants' Motion for Protective Order and Objection to Discovery Request, (Doc. No. 41).

**I.    BACKGROUND**

**A.    Procedural Background**

On August 31, 2015, Plaintiff William Thomas, a North Carolina prisoner currently incarcerated at Alexander Correctional Institution, filed a Complaint against Defendants pursuant to 42 U.S.C. § 1983, alleging that he was subjected to an excessive use of force on June 9, 2014, while he was incarcerated at Lanesboro Correctional Institution. (Doc. No. 1). On October 22, 2015, this Court ruled that the allegations in Plaintiff's Complaint were sufficient to satisfy the Court's frivolity determination against Defendants Triplett, Russell, Holder, Martinez, Chapman,

---

[1] Defendants note that on March 2, 2015, Sally Triplett's name was legally changed to Sally Pressley. To avoid confusion, she will be referred to as Sally Triplett in this Order.

1

and Snipe. (Doc. No. 10). Plaintiff's claims against the other defendants were dismissed. (Id. at 5).

On November 18, 2016, Defendants Triplett, Holder, Martinez, Chapman, and Snipe filed the pending motion for summary judgment.[2] (Doc. No. 50). On November 29, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 53). On December 1, 2016, Plaintiff filed a three-page response to the summary judgment motion, in which he did not present any evidence to rebut Defendants' evidence on summary judgment. (Doc. No. 54). Instead, he complained only that Defendants had not responded in full to his discovery requests. On, December 7, 2016, Defendants filed a Reply, in which they state that Defendants provided Plaintiff with objections and discovery responses on November 1, 2016. (Doc. No. 56).

### B. Factual Background

### 1. The Alleged Excessive Force Incident and the Summary Judgment Evidence

### a. Plaintiff's Allegations

In support of his excessive force claims, Plaintiff alleges the following in his verified Complaint:

> [O]n . . . 6-9-14 at approximately 12:30 pm [Plaintiff] was being escorted to lower richmond from upper richmond E pod. Defendants Sgt. Triplett, c/o Martinez, c/o Snipe, and c/o Holder initiated the use of excessive force upon him.
> While walking Plaintiff alleges he informed Sgt. Triplette and c/o Snipe, and c/o Martinez, and c/o Holder that the handcuffs were too tight and he also had prior shoulder injury which was in pain and needed relief. And [Plaintiff] was

---

[2] Defendant Russell has not been served, and the U.S. Marshal returned the summons as unexecuted as to Russell on December 13, 2016. (Doc. No. 57).

> ignored and then attempted to adjust his arm/shoulder position to relieve his pain.
>
> Plaintiff alleges that then said defendants threw him on the floor in the hallway and began to knee him, elbow him, kick him, and stomp on him. C/o Holder knee-dropped him in his side multiple times and the side of his face and head—c/o Martinez was also elbowing him while jacking the handcuffs in a position that would cause pain to plaintiff's wrist and arms as his hands were behind his back. C/o Snipe was kneeling into [Plaintiff's] chest and [Plaintiff] complained of not being able to breathe. C/o Chapman and Sgt. Triplett kicked and stomped [Plaintiff] while the others used this malicious force. Then put ankle shackles on [Plaintiff's] ankles so tight that they tore into his flesh and to assure that it would tear his skin. They took [Plaintiff's] socks and forced inmate to walk bare-footed down the hallway toward anson unit.
>
> [Plaintiff] . . . was stripped in the anson hallway booth and was beaten in arson hallway and inside the nurse's station. Then taken to the rec cages on lower Richmond outside and beaten again (Sgt. Triplett, Sgt. Russell, c/o Holder & c.o Chapman physically attempting to strip inmate while cuffed and assaulted inmate).
>
> While held on Richmond [Plaintiff] complained of injury and was ignored not being adequately examined his emergency request denied.

(Doc. No. 1 at 2-3). Based on the above factual allegations, Plaintiff alleges that Defendants Triplett, Russell, Holder, Martinez, Chapman, and Snipe used excessive force against him in violation of his Eighth Amendment rights. (Id. at 4). Plaintiff further alleges that these Defendants are also liable for failing to intervene and protect Plaintiff from the excessive force while each of the other officers used excessive force against him. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.[3] (Id. at 4-5).

   b.   **Defendants' Summary Judgment Materials**

In support of the summary judgment motion, Defendants have submitted the affidavit of non-defendant Kenneth Beaver, Assistant Superintendent for Custody and Operation at Lanesboro, who reviewed the June 9, 2014, investigation; the affidavit of Defendant Snipes; the affidavit of Defendant Martinez; the affidavit of Defendant Holder; the affidavit of Defendant

---

[3] Because Plaintiff has been transferred away from Lanesboro, his claims for declaratory and injunctive relief are moot. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009).

3

Triplett; the affidavit of Defendant Chapman; and the affidavit of nurse Judy Cauley, a non-defendant with knowledge of the June 9, 2014, incident and Plaintiff's medical treatment. Attached to the affidavits are the June 9, 2014, use of force incident report and witness statements, the relevant use of force, conditions of confinement, and disciplinary policies for the NCDPS and Lanesboro, Plaintiff's disciplinary history, the NCDPS Offense and Disciplinary Report from the incident, the HS51 Health Screen available to correctional officers for Plaintiff, and relevant medical records.

Defendants' summary judgment materials show that, at all relevant times, Plaintiff was a prisoner in the custody of the NCDPS housed at Lanesboro. He was serving a sentence term of six years and ten months as a habitual felon. (Doc. No. 51-7 at ¶ 11: Beaver Aff.). Plaintiff had a very aggressive disciplinary record and had been brought to segregation several times for cooling off periods and housing due to his threatening staff or disobeying direct orders. (Doc. No. 51-4 at ¶ 7: Holder Aff.; Doc. No. 51-2 at ¶ 7: Snipes Aff.; Doc. No. 51-3 at ¶ 9: Martinez Aff.). Before June 9, 2014, Plaintiff received disciplinary infractions for disobeying orders, using profanity, threatening and injuring staff, theft of property, and other offenses. (Doc. No. 51-7 at ¶ 12, Doc. No. 51-7, Ex. D; Doc. No. 51-5 at ¶ 10: Triplett Aff.). Plaintiff was classified as Security Threat Group ("STG") because of his gang affiliation. (Doc. No. 51-7 at ¶ 14, Doc. No. 51-7, Ex. E; Doc. No. 51-2 at ¶ 8). Plaintiff was in close custody at the highest level of custody. (Doc. No. 51-7 at ¶ 15; Doc. No. 51-5 at ¶ 8). Correctional officers had limited access to inmate medical information, and the information available did not show any medical restrictions for Plaintiff regarding physical limitations such as a prior shoulder injury. (Doc. No. 51-5, Ex. A).

1. **The alleged June 9, 2014, use of force incident and investigation**

4

Beaver is responsible for overseeing all custodial operations and staff in his supervisory chain of command to ensure compliance with departmental policies. (Doc. No. 51-7 at ¶ 5). This includes reviewing use of force incidents at Lanesboro following the investigation. (Id. at ¶¶ 6-9, Exs. A-B). Specifically, Beaver reviewed the incident report related to the alleged June 9, 2014, use of force investigation. (Id. at ¶ 10, Ex. C). The use of force investigation was also reviewed by Correctional Facility Administrator David Mitchell and Correctional Administrator Anne Harvey, as the designee for the Regional Director reviewing and approving use of force reports. (Id. at ¶¶ 45-47).

Before the alleged excessive force incident, Defendant Snipes was working in Upper Richmond, which houses inmates in the general population. (Doc. No. 51-2 at ¶ 9). Plaintiff was assigned to cell 25. (Id. at ¶ 10). Plaintiff was attempting to come out of the slider door. (Id.). While Plaintiff was at the slider door, he threatened to hurt Snipes when the slider door opened. (Id. at ¶ 11). Snipes called downstairs to the Lower Richmond unit for staff assistance. (Id. at 12; Doc. No. 51-5 at ¶ 11). According to Snipes, Plaintiff "needed to cool off." (Doc. No. 51-2 at ¶ 12).

Defendant Martinez came upstairs. (Doc. No. 51-2 at ¶ 13; Doc. No. 51-3 at ¶ 12). Martinez and Snipes went to Plaintiff's cell and ordered Plaintiff to submit to hand restraints. (Doc. No. 51-2 at ¶ 14). The cell door was opened. (Id. at ¶ 15). Plaintiff complied with the order, and Plaintiff's hands were restrained behind his back. (Id. at ¶ 16). Snipes and Martinez then escorted Plaintiff from the Upper Richmond Unit to the Lower Richmond Unit. (Doc. No. 51-7 at ¶ 20; Doc. No. 51-2 at ¶ 17; Doc. No. 51-3 at ¶ 15; Doc. No. 51-4 at ¶ 10). Plaintiff was being brought from general population in Upper Richmond to segregation in Lower Richmond because he had threatened staff. (Doc. No. 51-7 at ¶ 21; Doc. No. 51-4 at ¶ 11; Doc. No. 51-5 at

5

¶ 12). Martinez was escorting Plaintiff on his right side, and Snipes was on Plaintiff's left side. (Doc. No. 51-7 at ¶ 22; Doc. No. 51-2 at ¶ 18).

While being escorted to Lower Richmond, Plaintiff became combative, pulled away from Snipes, and pushed his left shoulder into Snipes. (Doc. No. 51-2 at ¶¶ 19, 20; Doc. No. 51-4 at ¶ 12; Doc. No. 51-7 at ¶ 23; Doc. No. 51-9 at ¶¶ 8-9: Chapman Aff.). Plaintiff then head-butted Snipes. (Doc. No. 51-7 at ¶ 23; Doc. No. 51-2 at ¶ 21; Doc. No. 51-3 at ¶ 16). In response, Martinez placed Plaintiff on the floor, where he maintained control until staff arrived to place Plaintiff in full restraints, and then he was assisted to his feet. (Doc. No. 51-7 at ¶ 24; Doc. No. 51-2 at ¶ 22; Doc. No. 51-3 at ¶¶ 17-19). Staff checked to make sure the handcuffs were not tight. (Doc. No. 51-3 at ¶ 37; Doc. No. 51-2 at ¶ 35; Doc. No. 51-4 at ¶ 26; Doc. No. 51-5 at ¶¶ 32-33). Plaintiff was using profanity and threatening to attack staff. (Doc. No. 51-2 at ¶ 25; Doc. No. 51-4 at ¶ 14). The entire incident lasted about two minutes or less. (Doc. No. 51-5 at ¶ 30; Doc. No. 51-2 at ¶ 34; Doc. No. 51-3 at ¶ 29; Doc. No. 51-4 at ¶ 24). According to Defendants, although Plaintiff alleges in his Complaint that he had a prior shoulder injury, his medical screen HS51, which correctional staff such as Defendants could view, showed no prior shoulder injury. (Doc. No. 51-5 at ¶ 34; Doc. No. 51-5, Ex. A; Doc. No. 51-2 at ¶ 26).

Following the incident, staff performed a pat frisk on Plaintiff and discovered unidentified pills, which were considered contraband. (Doc. No. 51-7 at ¶ 25; Doc. No. 51-2 at ¶ 37; Doc. No. 51-4 at ¶ 27; Doc. No. 51-5 at ¶ 35). Plaintiff was escorted to Anson Unit to a designated area for a complete search to be conducted. (Doc. No. 51-2 at ¶ 38; Doc. No. 51-4 at ¶ 28). Once in the designated area, Plaintiff became aggressive, used profanity, and again threatened staff that he would harm them. (Doc. No. 51-2 at ¶ 40; Doc. No. 51-4 at ¶ 29).

Snipes was sent to medical for evaluation because Plaintiff had head-butted him. (Doc.

6

No. 51-2 at ¶ 41). Plaintiff was escorted to the outside recreation cage for holding until he was taken to medical for observation. (Doc. No. 51-7 at ¶ 26; Doc. No. 51-2 at ¶ 44). Chapman, Martinez, and Holder escorted Plaintiff to the medical examination room so he could be medically evaluated for the prior use of force incident and to allow him time to calm down and prevent further injury. (Doc. No. 51-5 at ¶ 40; Doc. No. 51-7 at ¶ 27; Doc. No. 51-9 at ¶ 10). Therefore, Plaintiff was provided with an opportunity to be medically assessed. (Doc. No. 51-7 at ¶ 28; Doc. No. 51-2 at ¶¶ 40, 44; Doc. No. 51-4 at ¶ 34).

Defendants' evidence shows that Plaintiff's prior medical history included head trauma in 2009, asthma, depression, and other conditions, but there was no documented history of shoulder pain. (Doc. No. 51-6 at ¶ 12, Ex. A). While examining Plaintiff, registered nurse Cauley asked Plaintiff if he had any physical complaints or concerns, and Plaintiff replied that he did not. (Id. at ¶ 13). Cauley also asked Plaintiff if he was in any pain, and Plaintiff denied being in any pain. (Id. at ¶ 14, Ex. A; Doc. No. 51-7 at ¶ 37). Nurse Cauley noted an abrasion or scratch on both shoulders and right elbow, but she noted that there was no bleeding. (Doc. No. 51-6 at ¶ 15).

Plaintiff was still in restraints at this point, and nurse Cauley asked staff to loosen Plaintiff's hand restraints so she should examine his wrist. (Doc. No. 51-3 at ¶ 39; Doc. No. 51-7 at ¶ 29; No. 51-6 at ¶¶ 11, 16, Ex. A; Doc. No. 51-9 at ¶ 14). Given Plaintiff's earlier aggressive behavior, staff informed Cauley that Plaintiff should remain in restraints for safety reasons, but nurse Cauley again requested that the restraints be removed. (Doc. No. 51-9 at ¶¶ 15-16). Holder removed the hand restraints from Plaintiff's left hand. (Doc. No. 51-7 at ¶ 30; Doc. No. 51-3 at ¶ 40; Doc. No. 51-9 at ¶ 17). Before both restraints could be removed, Plaintiff got out of the restraints. (Doc. No. 51-6 at ¶ 16). At that time, Plaintiff became aggressive and combative, immediately turning around and punching Holder in his face, uppercutting Holder in

7

his left eye. (Doc. No. 51-4 at ¶ 43; Doc. No. 51-7 at ¶ 31; Doc. No. 51-6 at ¶ 17; Doc. No. 51-3 at ¶ 41; Doc. No. 51-9 at ¶ 18). Holder and other staff restrained Plaintiff on the medical examination table and, once they gained control, they placed Plaintiff in full restraints. (Doc. No. 51-3 at ¶ 43; Doc. No. 51-7 at ¶¶ 32, 33; Doc. No. 51-6 at ¶ 19; Doc. No. 51-4 at ¶ 44; Doc. No. 51-9 at ¶ 20). After Plaintiff was restrained, he was assisted to his feet, and staff checked to make sure the restraints were not too tight. (Doc. No. 51-7 at ¶ 36; Doc. No. 51-9 at ¶¶ 20, 22-23). No additional injuries were noted. (Doc. No. 51-6 at ¶ 21). This entire second incident lasted less than one minute. (Doc. No. 51-3 at ¶ 47; Doc. No. 51-4 at ¶ 48; Doc. No. 51-5 at ¶ 48). Holder was medically evaluated because his left eye was hit by Plaintiff. (Doc. No. 51-4 at ¶ 49).

### 2. June 9, 2014, use of force incident determination

After the use of force investigation, NCDPS management, including Beaver and Mitchell, determined that the force used against Plaintiff was applied in accordance with NCDPS policies and procedures. (Doc. No. 51-7 at ¶ 40; Doc. No. 51-7, Ex. C). Moreover, the investigation did not reveal any use of force by Triplett or Russell. (Doc. No. 51-7 at ¶ 39). The investigation determined that any force used by Holder, Martinez, Chapman, Snipes, and staff on June 9, 2014, against Plaintiff was an appropriate amount of force to gain control and restrain Plaintiff, to ensure that he complied with departmental policies, and to prevent injury to staff given Plaintiff's non-compliant, aggressive, and combative behavior. (Id. at ¶¶ 41, 42). No corrective action was recommended for the staff involved. (Id.). On or about November 20, 2014, Harvey reviewed the report of investigation for the June 9, 2014, incident and concurred that the force used by staff against Plaintiff was reasonable and necessary. (Id., Ex. C).

### 3. Plaintiff's Disciplinary Action

8

Plaintiff was disciplined for threatening staff on June 9, 2014. (Doc. No. 51-7 at ¶ 50; Doc. No. 51-8, Ex. G). He was found guilty of threatening to harm or injure staff (a B18 infraction) and using disrespectful language or gestures to staff such as profanity or lewd or defamatory comments (a C02 infraction). (Doc. No. 51-7 at ¶ 51; Doc. No. 51-8, Ex. H). Plaintiff was also disciplined for assaulting staff and possessing contraband. (Doc. No. 51-7 at ¶ 52; Doc. No. 51-8, Ex. I). Plaintiff was found guilty of assaulting staff (an A03 infraction) and of selling, accumulating, giving, misusing, or hiding medication (a B19 infraction). (Doc. No. 51-7 at ¶ 53; Doc. No. 51-8, Ex. I).

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson,

477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted,

10

and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

For the following reasons, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim against them. First, to the extent that Plaintiff has sued Defendants in their official capacities, the suit is against the NCDPS and the State of North Carolina. However, neither the State nor it agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).

Next, to the extent that Defendants are being sued in their individual capacities, Defendants' evidence on summary judgment shows that the force used by Defendants was applied in a good-faith effort to restore order and discipline, and it was not done maliciously and sadistically for the very purpose of causing harm.[4] That is, the record demonstrates that the use of force on June 9, 2014, was appropriate to control and restrain Plaintiff and to prevent further injury to staff given his non-compliance with verbal orders, profanity, and combative behavior. (Doc. No. 51-3 at ¶ 28; Doc. No. 51-2 at ¶ 33; Doc. No. 51-4 at ¶ 23; Doc. No. 51-5 at ¶ 29; Doc.

---

[4] The Court notes that, as to any legal conclusions made in Defendants' supporting affidavits with regard to use of force, those legal conclusions have no impact on any legal determination by this Court as to whether Defendants used excessive force. See United States v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006). Therefore, the Court has not given these legal conclusions any weight in its determination on summary judgment.

11

No. 51-9 at ¶ 29). Moreover, Defendants have presented evidence that, during the use of force, Plaintiff assaulted both Holder and Snipes. (Doc. No. 51-7 at ¶¶ 23, 31; No. 51-6 at ¶ 17; Doc. No. 51-3 at ¶¶ 16, 41; Doc. No. 51-4 at ¶ 43; Doc. No. 51-2 at ¶ 21; Doc. No. 51-9 at ¶¶ 9, 18). Plaintiff has produced no evidence on summary judgment to rebut Defendants' evidence showing that he assaulted Holder and Snipes. Defendants responded appropriately given Plaintiff's disruptive behavior, his refusal to comply with orders, and his assault on Holder and Snipes. See Lewis v. Downey, 581 F.3d 467, 476 (7th Cir. 2009) (holding that "[o]rders given must be obeyed. . . . When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.").

Plaintiff has presented no evidence on summary judgment to rebut Defendants' evidence that Plaintiff was refusing to obey orders and was being extremely combative when Defendants used force against him, including assaulting two of the officers who were trying to get Plaintiff under control. Furthermore, despite Plaintiff's conclusory allegations regarding injuries in the Complaint, the record evidence, which Plaintiff has not attempted to rebut, shows that Plaintiff did not report any injuries or pain when he was evaluated after the use of force incident; the only injury noted by medical was an abrasion or scratch on both shoulders and right elbow; there was no bleeding; and no additional injuries were noted. (Doc. No. 51-6, Ex. A; No. 51-6 at ¶¶ 13-15; Doc. No. 51-7 at ¶ 37). While the extent of the injury (or lack thereof) is not dispositive under Wilkins, it most certainly is indicative as to the amount of force applied to Plaintiff. Thus, under Whitley, the Court easily may conclude that there was no malicious or sadistic conduct but only minimal force by Defendants used in a good faith effort to restore discipline in a situation

that presented danger to inmates and staff.[5]

In sum, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendants used excessive force against Plaintiff during the incident on June 9, 2014. Thus, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.[6]

## IV.    CONCLUSION

For the reasons stated herein, the Court will grant summary judgment to Defendants and dismiss this action with prejudice.

---

[5] The Court recognizes that Plaintiff's Complaint was verified, and therefore may be used as an opposing affidavit on summary judgment. However, given the overwhelming evidence presented by Defendants as to Plaintiff's combativeness, including his assault on two of the officers attempting to restore order and control, and his very minimal injuries, the Court agrees with Defendants that no reasonable jury could find for Plaintiff in this case. That is, given the evidence presented on summary judgment by Defendants, no reasonable jury would accept Plaintiff's conclusory allegations in his Complaint that Defendants "threw" Plaintiff on the floor, "kicked" him and "stomped" on him, and "beat" him. See Smith v. Ozmint, 578 F.3d 246, 254 (4th Cir. 2009) ("Although the undersigned does not make a credibility determination, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'") (citing Scott v. Harris, 550 U.S. 372, 380 (2007)).

[6] Defendants raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 50), is **GRANTED**.

2. Defendants' Motion for Protective Order and Objection to Discovery Request, (Doc. No. 41), is **DENIED** as moot.

3. The Clerk is directed to terminate this action.

Signed: February 6, 2017

Frank D. Whitney
Chief United States District Judge